# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES,**
*Plaintiff-Appellant*

v.

**NITEK ELECTRONICS, INC.,**
*Defendant-Appellee*

---

2015-1166

---

Appeal from the United States Court of International Trade in No. 1:11-cv-00078-JMB, Senior Judge Judith M. Barzilay.

---

Decided: December 1, 2015

---

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellant. Also represented by JEANNE E. DAVIDSON, PATRICIA M. MCCARTHY, BENJAMIN C. MIZER; ERIC PAUL DELMAR, Office of the Assistant Chief Counsel, United States Customs and Border Protection, El Paso, TX.

ROBERT CLIFTON BURNS, Bryan Cave LLP, Washington, DC, argued for appellee. Also represented by MICHAEL ZARA, Santa Monica, CA.

---

Before NEWMAN, CLEVENGER, and O'MALLEY, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

The United States appeals from a decision of the United States Court of International Trade dismissing the Government's penalty claim based on negligence for failure to exhaust the administrative remedies under 19 U.S.C. § 1592. *United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298 (Ct. Int'l Trade 2012), *recons. denied*, 2012 WL 3195084 (Ct. Int'l Trade Aug. 7, 2012). Specifically, the Government argues that it should not be barred from seeking a penalty claim in court at a culpability level that is lower than that administratively asserted by U.S. Customs and Border Protection ("Customs"). Because the statutory framework of § 1592 does not allow the Government to change the culpability level that Customs alleged in the penalty claim, we affirm.

## BACKGROUND

Between June 14, 2001 and March 22, 2004, Nitek Electronics, Inc. ("Nitek") entered thirty-six shipments of pipe fitting components used for gas meters, which included gas meter swivels and gas meter nuts, into the United States from China. Customs issued a letter to Nitek on April 1, 2004, claiming that the merchandise was misclassified under the U.S. Harmonized Tariff Schedule ("HTSUS"). Accordingly, Customs demanded payment for lost duties under 19 U.S.C. § 1592(d) that resulted from the alleged misclassification. Customs further alleged that the misclassification was also subject to antidumping duties. On March 21, 2005, Customs issued a pre-penalty notice to Nitek alleging that Nitek "entered or attempted to enter pipe fittings into the commerce of the United States by means of material false statements and documents, and/or omissions." The notice stated that the tentative culpability was gross negligence.

Concurrently, other importers of gas meter swivels and gas meter nuts challenged the antidumping duty order in the Court of International Trade. *See Sango Int'l L.P. v. United States*, 429 F. Supp. 2d 1356 (Ct. Int'l Trade 2006). Customs agreed to stay the penalty proceedings pending resolution of Sango International's challenge in exchange for Nitek subsequently waiving the statute of limitations. This Court later issued a final decision in *Sango International* on June 4, 2009, which sustained the anti-dumping duty order. *Sango Int'l L.P. v. United States*, 567 F.3d 1356 (Fed. Cir. 2009).

On February 24, 2011, Customs issued Nitek a final penalty claim and again stated that the tentative culpability was gross negligence. Nitek responded by letter opposing the penalty claim for gross negligence stating that it had not acted with wanton disregard for the law when dealing with the classification issues. Nitek also offered to pay all duties owed. Customs then referred the matter to the United States Department of Justice ("United States" or "Government") to bring a claim against Nitek in the Court of International Trade to enforce the penalty under its jurisdiction in 28 U.S.C. § 1582. The United States then brought suit against Nitek to recover lost duties, antidumping duties, and a penalty based on negligence under 19 U.S.C. § 1592 in connection with the Nitek's misclassification of gas meter parts.

Nitek filed a motion to dismiss the case under two theories. First, Nitek moved to dismiss for lack of subject matter jurisdiction under USCIT Rule 12(b)(1) because the Government failed to exhaust all administrative remedies before filing suit in the Court of International Trade. The court denied dismissal on this ground because it found that exhaustion was not a jurisdictional matter and can be waived. Alternatively, Nitek moved to dismiss for failure to state a claim for which relief may be granted under USCIT Rule 12(b)(5) (now 12(b)(6)). The court denied dismissal of the claims to recover lost duties and

antidumping duties. However, the court did dismiss the Government's claim for a penalty based on negligence. The court reasoned that since Customs had only issued a penalty based on gross negligence, the Government could not bring a penalty claim in court based on negligence. The negligence claim was "an entirely new claim" that had not been pursued by Customs at the administrative level. Thus, the court found that the penalty claim was not properly before the court because the Government had failed to exhaust all administrative remedies by not having Customs demand a penalty based on negligence, instead of gross negligence.

The Government then moved for reconsideration, but the court reaffirmed its reading of the statute and denied reconsideration. The court explained that "for the Court to have any role, there must exist a claim for a specified violation of § 1592(a)—namely, a material false statement or omission amounting to 'fraud, gross negligence, or negligence'—for which the government is seeking recovery, thereby limiting the scope of the government's § 1592 action to the administrative claim Customs imposed below."

On September 23, 2014, the parties stipulated that the United States is entitled to recover $47,884.27 from Nitek for the lost duties and antidumping duties. The parties also stipulated that they could not appeal their agreement on these counts. Accordingly, the court ordered a final judgment on October 1, 2014, for the United States for the above amount.

The United States then timely appealed the dismissal of the penalty claim based on negligence to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the Court of International Trade's legal determinations de novo, including the court's dismissal for

failure to state a claim for which relief can be granted. *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The trade court's finding on exhaustion of administrative remedies is reviewed for abuse of discretion. *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013) (reviewing the district court's dismissal for failure to exhaust for abuse of discretion); *Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007) (reviewing the trade court's finding of no exhaustion of administrative remedies for abuse of discretion).

The issue in this case is whether the court properly dismissed the Government's penalty claim for failure to state a claim because the underlying administrative penalty was based on gross negligence, not negligence. This requires a close examination of the statutory scheme in 19 U.S.C. § 1592, which governs this penalty claim.

First, § 1592(a) states that no one may enter merchandise into the United States by presenting material and false information by means of fraud, gross negligence, or negligence. 19 U.S.C. § 1592(a)(1). If Customs believes that there has been a violation of subsection (a), § 1592(b) provides that Customs must first issue a pre-penalty notice to the importer. The pre-penalty notice must "specify all laws and regulations allegedly violated" and "state whether the alleged violation occurred as a result of fraud, gross negligence, or negligence." § 1592(b)(1)(A)(iii), (v). Customs must also inform the accused importer "that he shall have a reasonable opportunity to make representations, both oral and written, as to why a claim for a monetary penalty should not be issued in the amount stated." § 1592(b)(1)(A)(vii). Next, if Customs determines that there was a violation after considering any represen-

tations made by the accused importer, Customs must issue a written penalty claim under § 1592(b)(2). The penalty claim must specify any changes in the information provided in the pre-penalty notice, including the level of culpability that was initially stated. The importer may then follow the procedures under 19 U.S.C. § 1618 to seek remission or mitigation of the penalty. At the conclusion of any such proceedings, Customs "shall provide to the person concerned a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based." § 1592(b)(2).

Under § 1592(e), the United States can bring a claim in the Court of International Trade "for the recovery of any monetary penalty claimed under this section." The statute also states that "all issues, including the amount of the penalty, shall be tried de novo," § 1592(e)(1), and sets out the burden of proof for each culpability level. For fraud, the United States has to prove the violation by clear and convincing evidence. § 1592(e)(2). For gross negligence, the United States has the burden to prove the elements of the violation. § 1592(e)(3). For negligence, the United States has the burden to prove the act or omission that caused the violation and the alleged violator has the burden to prove that their actions were not negligent. § 1592(e)(4).

From the statutory framework, it is clear that § 1592(e) creates a cause of action for the United States to recover penalty claims. Subsection 1592(b) states the procedures that Customs must follow when making penalty claims, including specifying the level of culpability (fraud, gross negligence, or negligence). In contrast, § 1592(e) merely gives the United States the authority to recover the penalty if the importer does not pay.

The Government argues that the three levels of culpability are "varying degrees of the falsity of the state-

ment or omission underlying a violation," not separate claims. Appellant's Br. 12. The Government contends that the purpose of § 1592 is for Customs to identify the maximum penalty amount that can be collected for a violation. Under this theory, the Government believes that § 1592(e) allows the court to review the penalty determination de novo, meaning that the Department of Justice can independently assess the penalty claim issued by Customs and assert a penalty claim at a different culpability level. We do not agree.

The language of the statute and the legislative history support a reading that penalty claims based on fraud, gross negligence, or negligence are separate claims and the Department of Justice cannot independently enforce a penalty claim in court for a culpability level that was not pursued administratively by Customs. The structure of § 1592 indicates that the proceedings in Customs are separate from the proceedings in the Court of International Trade and the rules of one do not apply to the rules of the other. Subsection 1592(b) details the procedures for Customs whereas § 1592(e) addresses the court proceedings. Subsection (b) enables Customs to determine the level of culpability and requires Customs to inform the importer if the culpability level changes throughout the administrative process. This indicates that notice of a penalty claim based on a specific culpability level does not put the importer on notice of claims based on the other culpability levels because Customs must inform the importer if the culpability changes. This means that each culpability level is a separate claim and Customs chooses which culpability level or levels to assert against the importer. Subsection 1592(e) states that the Government can initiate an action in court "for the recovery of any monetary penalty claimed under this section" and that all issues will be tried de novo. This language specifies that the court proceeding is an enforcement mechanism to be used if the importer does not pay the penalty. Read to-

gether, the recovery language and the de novo review mean that that the court can consider all issues de novo that are alleged in Customs' final penalty claim. Specifically, this means that if Customs determines that the importer violated the statute based on negligence, the court does not need to give any deference to Customs' finding that the importer was negligent. However, the de novo review does not give the Government power to independently bring a claim that Customs did not allege. There is no indication in the plain meaning of subsection (e) that the Government may bring a claim based on a different culpability level.

The legislative history of § 1592 states that one objective of the de novo standard was to relate the amount of penalty to the culpability level and ensure due process for the importer. S. REP. NO. 95-778, at *1 (1978). To ensure fairness to the importer, Congress added the procedures for Customs under § 1592(b). The changes also enabled the court to review the amount of the asserted penalty, which the prior version of § 1592 did not allow. The main focus in the legislative history is that it is appropriate for the court to review the amount of penalty. S. REP. NO. 95-778, at *20 ("If an importer refuses to pay a [§ 1592] monetary penalty and is sued by the United States in a district court, all issues, including the appropriateness of the penalty amount, would be considered by the court."); *id.* at *21 ("[T]he Committee emphasizes that the appropriateness of the amount of the penalty is a proper subject for judicial review.") However, the legislative history nowhere suggests that the Department of Justice should determine the level of culpability. It leaves this determination in the hands of Customs.

As we stated in *United States v. Ford Motor Co.*, 463 F.3d 1286 (Fed. Cir. 2006), the Court of International Trade has correctly defined the proper scope of the de novo review provided for in § 1592(e). In *Ford*, we reviewed that court's analysis in *United States v. Optrex*, 29

C.I.T. 1494 (Ct. Int'l Trade 2005), which concluded that "the de novo standard [in § 1592(e)] refers to the issues in the context of a specific claim based on one of three types of section 1592 violations and does not allow the court to review entirely new penalty claims." *Ford*, 463 F.3d at 1298 (quoting *Optrex*, 29 C.I.T. at 1500). In *Optrex*, the Government moved to amend its complaint for the penalty claim to allege higher levels of culpability than Customs originally alleged in the administrative proceedings. *Optrex*, 29 C.I.T. at 1495–96. The Government argued that "as long as the United States commences a section 1592 action," the de novo review of § 1592(e) puts "no limitation upon the 'issues' addressed or the 'amount of the penalty.'" *Id.* at 1499. The court denied the motion to amend, finding that the de novo review was limited to reviewing penalty claims for culpability levels that Customs had asserted. *Id.* at 1500. The court reasoned that the basic purpose of the statute is "to give an importer an opportunity to resolve a penalty proceeding before Customs, before any action in [the Court of International Trade]." *Id.* (citing S. REP. NO. 95-778, at *19–20 (1978)).

We are now faced with a similar issue and see no reason to interpret § 1592 differently in this case. The Government tries to distinguish this case from *Optrex* by noting that the Government in *Optrex* wanted to add claims at higher culpability levels than what Customs had asserted whereas in this case, the Government is bringing a penalty claim for a lesser culpability level than what Customs asserted. The Government argues that "negligence is merely a lesser included offense within the universe of gross negligence." Appellant's Br. 18. The Government contends that Customs' penalty based on gross negligence gave Nitek notice that all lesser included culpability levels (i.e., negligence) were included in the gross negligence penalty notice. The Government cites to criminal law cases for this proposition. *Id.* at 18–19 (citing *United States v. Stolarz*, 550 F.2d 488 (9th Cir. 1977), and

*Mildwoff v. Cunningham*, 432 F. Supp. 814 (S.D.N.Y. 1977)). However, there is nothing in the language of the statute, legislative history, or treatment in the prior cases to support importing that idea into this statutory framework. In fact, the procedures under § 1592(b) strongly suggest that the importer is not put on notice of lesser included offenses because Customs must notify the importer of any changes to the level of culpability throughout the administrative proceeding.

The doctrine of exhaustion requires that all administrative remedies be exhausted before seeking enforcement of administrative action. *United States v. Priority Prods., Inc.*, 793 F.2d 296, 300 (Fed. Cir. 1986). 28 U.S.C. § 2637(d) provides that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." We have held that exhaustion is not strictly a jurisdictional requirement and therefore the court may waive the requirement at the court's discretion. *See Priority Prods., Inc.*, 793 F.2d at 300. However, § 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Here, the Court of International Trade found that § 1592 precludes a waiver of exhaustion in this case. The court specifically points to the requirements under § 1592(b)(1) and (2) that direct Customs to articulate a level of culpability in the pre-penalty notice and notify the importer of any changes to that culpability level in the final penalty claim. Customs must inform the accused importer before enforcing a penalty claim for a different culpability level in court. Since Nitek was not notified of changing the culpability level from gross negligence to negligence, the court correctly found that the procedures under § 1592 were not properly followed. Accordingly, the court found that the Government did not exhaust its administrative remedies

because Customs could have changed the culpability level in the administrative proceedings. If waiver of exhaustion was allowed under these circumstances it would be contrary to the purpose of the statute, which is to provide fair administrative opportunities for resolution of penalties. Also, it would leave the importer guessing at what level of culpability he was accused of in court and thus would not properly put him on notice of the penalty claim.

We review a court's dismissal for failure to exhaust administrative remedies for an abuse of discretion. *Itochu Bldg. Prods.*, 733 F.3d at 1145. The court did not make any error of law or clearly erroneous fact finding that would warrant a finding of abuse of discretion in this case. As discussed above, the court found that requiring exhaustion in penalty recovery cases is consistent with the statutory scheme set up in § 1592. The court properly interpreted the statute and applied it to this case consistent with our observation in *United States v. Ford Motor Co.* Therefore, the court did not abuse its discretion in finding that waiver of exhaustion was not appropriate in this case.

CONCLUSION

The language of subsection (e) of § 1592—which vests the United States with authority to pursue recovery of penalty claims in the Court of International Trade—clearly defines that authority. The United States, under subsection (e), is charged with "the recovery of any monetary penalty claimed under this section." As noted above, the structure of the statute identifies the monetary penalty "claimed" under § 1592 as the claim made by Customs, the agency which has first-hand knowledge of the facts of the case and which is responsible for policing the statute. Under subsection (e), the Department of Justice acts as the litigating attorney for Customs, seeking to recover the claim made by Customs. We reject the Government's preference that we read subsection (e) as authorization for

it to recover a monetary penalty claimed by the Department of Justice in its discretion "under this subsection."

We thus affirm the Court of International Trade's interpretation of § 1592. The court correctly found that the Government did not exhaust its remedies by bypassing Customs and independently asserting a penalty claim based on a different level of culpability. The Government cannot bring a penalty claim based on negligence in court because such a claim did not exist at the administrative level.

**AFFIRMED**